[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This court revisited this case because the Connecticut Supreme Court reversed Judge Kaplan's child support order entered on July 16, 1991, on a typical short-calendar day in Hartford Family Court. The Supreme Court held that the obligor's actual living expenses were not an adequate basis for the court deviating from the child support guidelines under the deviation criteria, "other equitable factors" and remanded the case for further hearing. Favrow v. Vargas,222 Conn. 689 (1992).
This case was brought by the plaintiff, Lucy Favrow, to obtain support payments from the defendant, Jacqueline Vargas, for two of the defendant's children, Janet and Noemi.
When the parties first appeared in court after the remand, this court discovered that the children who were the subject of Judge Kaplan's order were also the subject of three other court actions. First, there was a support action brought by Lucy Favrow against her brother, Edwin Mercado, Janet's father, in Hartford Superior Court, family division. Second, there was an action brought by Lucy Favrow, against Ednardo Maldonado, the father of Noemi and Sarai Maldonado, two children of the defendant, which action is currently in the magistrate division of the Hartford Superior Court. Finally, there is an action in the Juvenile Court Division of the Superior Court in Plainville brought by Lucy Favrow to terminate the parental rights of Jacqueline Vargas, Edwin Mercado and Ednardo Maldonado as to Noemi and Janet. This action in Juvenile Court is a successor to a previous action in Probate Court of Newington seeking to terminate the defendant's parental rights as to all three of her children, Sarai, Noemi and Janet. CT Page 7450
The first action this court took was to order the defendant to implead the defendant fathers, which was accomplished.
Next, the court obtained possession of all the files, including the Juvenile Court file.
After gathering all that data, the court held a hearing on the issues in this case. At the end of that hearing, the court discovered during argument that the state of Connecticut ought to be brought into the case because of medicaid payments it made on behalf of the children. That fact was not disclosed during the evidentiary hearing. The court ordered the plaintiff to notify the Attorney General's Office so that office could enter its appearance in the case to protect the State's interest. The Attorney General's Office entered its appearance and then subsequently disclosed to the court that in addition to the medicaid payments, Sarai had been in the custody of the Connecticut Department of Children and Youth Services (DCYS) from February 4, 1991 to August 26, 1991, for which DCYS paid $9,626.90 to other agencies.[1]
Thus, this court became privy to a whole series of facts that neither Judge Kaplan nor the Connecticut Supreme Court were aware of, and those facts, do, in fact, implicate the decisional process in this case. There are several reasons for the lack of knowledge.
One, the system's response to the handling of the custody, visitation and support of the children, born to this one defendant, was to involve four court divisions, three State agencies, with no method of communication between any of them.
Two, the concept of the support collection system is that you can handle different problems of one family in separate courts as though the problems have no inter-relationship.
Three, misrepresentations were made to Judge Kaplan initially in this case when the attorney, on behalf of the plaintiff, claimed that there was no state involvement with the Vargas children proximate to the hearing date of July 16, 1991. CT Page 7451
Further complicating the picture is the use of guidelines support percentages that were developed from intact family statistics but are now being applied to fragmented families.
What are the facts of this case? Jacqueline Vargas, the defendant, who is now thirty-five years old, married Ednardo Maldonado on September 15, 1975, when she was seventeen years old and he was twenty-two. Their marriage resulted in two children: Sarai Maldonado, born March 6, 1977; and Jessica Noemi Maldonado, born February 29, 1979. Jacqueline and Ednardo were divorced in 1981, after a short marriage, dominated by claims of violence and substance abuse.
Following her divorce, Ms. Vargas met and married her second husband, Edwin Mercado, the brother of this plaintiff, Lucy Favrow, on May 2, 1985, in Puerto Rico, where she had returned after her disastrous first marriage. This marriage resulted in one child, Janet Mercado, born January 14, 1985. This marriage, too, was dominated by turmoil, fighting, drugs and instability. Although Edwin Mercado and Jackie Vargas were never divorced, they have been separated since 1986.[2]
During the short time that Edwin Mercado and Jacqueline Vargas were living together, they spent some time living with the plaintiff Lucy Favrow, Edwin Mercado's sister. Lucy Favrow, who is now forty-four years old, also had a short, disastrous first marriage dominated by violence, but which resulted in the birth of a child who was later adopted by her present husband, Leroy Henry Ray Favrow. The Favrows have now been married 19 years, but have no children born to their marriage. When Edwin Mercado and Jacqueline separated in 1986, Ms. Vargas returned to Puerto Rico with the children, but drug abuse had by then become a part of her life. It was during that year, that Lucy Favrow, the plaintiff, had her employer, an attorney, prepare two documents entitled, "Guardianship and Custody Agreements" which provided that Jacqueline Vargas would turn over her children to Lucy Favrow and her husband, with the understanding that the Favrows would assume the care, custody, guardianship, support, maintenance, and education of the children. Jacqueline Vargas executed that document on November 4, 1986 and Lucy Favrow and her husband took CT Page 7452 possession of the children shortly thereafter.
Subsequently, the defendant, Jacqueline Vargas and the fathers of the children, Edwin Mercado and Ednardo Maldonado, were removed as guardians of the children by the Probate Court in Newington Connecticut, but were granted reasonable visitation rights with the children. Lucy Favrow also requested that the Probate Court in Newington terminate the parental rights of Ms. Vargas and the fathers on the basis of their consent. That court later dismissed the complaint because the consent by then had been withdrawn and the matter was transferred to the Juvenile Court in 1992 where termination was sought on the claim of no ongoing relationhip [relationship] between the children and parents.
By 1989 and 1990, Ms. Vargas, had successfully completed a drug program and was now vigorously seeking of the children for the first time.
File No. 606804 of the Superior Court, reflects that on May 30, 1990 Lucy Favrow obtained a judgment for support against Ednardo Maldonado for the two children, Sarai and Noemi, in the amount of $150.00 per week, plus $25.00 per week on an arrearage of $56,000.00. In addition, defendant was to obtain medical insurance from his place of employment, if available, with all unreimbursed medical shared 50/50 between Ms. Favrow and the defendant.
On the same day, May 30, 1990, the plaintiff, Lucy Favrow, in File No. 606805, obtained a judgment for support against Edwin Mercado for the child, Janet Mercado-Vargas, in the amount of $50.00 per week child support, and $25.00 on an arrearage of $35,720.00. That judgment also provided that the defendant would provide medical insurance, as available through his place of employment, and that all unreimbursed medicals would be shared 50/50 between Ms. Favrow and Mr. Mercado.[3]
On May 15, 1991 the plaintiff brought this case seeking support against Jacqueline Vargas for two children. Shortly thereafter, in August of 1991, the defendant, Jacqueline Vargas, obtained guardianship of her minor child, Sarai, who began to reside with her. Ms. Favrow continued to pursue Mr. Maldonado in the Magistrate's court, using the services of support enforcement for that purpose. On CT Page 7453 February 28, 1992, she secured a new order against Mr. Maldonado, whose earnings had been decreased by then. She obtained an order of $67.00 per week child support for Noemi only, and $26.00 per week on the arrearage, leaving Mr. Maldonado with only $136.00 per week. Under the guidelines that would leave no money for him to pay support for Sarai, who was then with Jacqueline Vargas. Neither Sarai nor Ms. Vargas were notified of this action by the Magistrate Court.
The following facts were developed as to the State of Connecticut claims. AFDC public assistance payments were made from February 1, 1993 through June 30, 1993 for the benefit of Janet Mercado. Medicaid payments were made on behalf of the minor children from December 27, 1986, totaling $606.48. This court determined that medical insurance was available from Edwin Mercado's employer for Janet, but that was never pursued by Lucy Favrow against her brother. If there had been medical insurance, the State would not have had to pay the Medicaid payments. The plaintiff sought the aid of support enforcement against Ednardo Maldonado but not against her brother, Edwin Mercado. Again, it was revealed that Sarai Maldonado, who claims she was abused in the Favrow home, was in custody of the Connecticut Department of Children and Youth Services from February 4, 1991 to August 28, 1991. From February 4, 1991 through March 28, 1991 she lived at Junction 1019; from March 28, 1991 through August 28, 1991, she lived in a foster home. During that period of time, DCYS paid $9,626.90 ($6,769.36 while Sarai lived at Junction 1019, and $2,857.54 while in a foster home) for the support and care of Sarai.
To repeat, on August 28, 1991, the defendant, Jacqueline Vargas, was given custody of Sarai Maldonado, whom she lived with until at least February 1, 1993. Thereafter, she lived with some people in New Jersey and, subsequently, at her last sighting, appears to have been living with Ednardo Maldonado, effective May 2, 1993.
In June of 1993 the plaintiff lost her battle to terminate the parental rights of the defendant on the grounds of no ongoing relationship. She retained guardianship, however, as to Janet and Noemi — and the wars continue over visitation and custody. CT Page 7454
The plaintiff has withdrawn her claims for support against Jacqueline Vargas, for the period prior to Judge Kaplan's order on July 16, 1991. The State acknowledges that Jacqueline Vargas had no demonstrable ability to pay any support payments prior to April 6, 1991, so that any liability for her repayment to the State, if any, would be for that period of time from April 16, 1991 through August 28, 1991.
The affidavits submitted by the parties reflect the following data:
Lucy Favrow submitted an affidavit which reflected net income of $358.25. However, in past affidavits, her husband's net income reflects a net income of approximately $773.61, for a total of $1,131.86. Ednardo Maldonado reflects a net income of $230.72, based upon his employer's statement. Edwin Mercado reflects a net income of $265.13 The affidavit of defendant, Jacqueline Vargas, however, reflected a net weekly income of $230.00. From July 16, 1991 to November 1991, her weekly income was $215.00.
The first issue that the court must determine is the applicability of the guidelines. Although the guidelines shall be considered in addition to and not in lieu of the criteria for support awards established by 46b-84 of the Connecticut General Statutes, "the guidelines schedule is presumed to be the appropriate level of support." Child Support Guidelines, January 199. That presumption may be rebutted by a specific finding that the application of the guidelines would be inequitable or inappropriate as determined by certain criteria listed in the text of the Child Support Guidelines. The application of the guidelines would be inequitable or inappropriate in this case because of three factors listed in guideline text and designated as "(g) needs of other dependents", "(k) significant visitation expenses" and "(n) other equitable factors."
This case has been dominated by the battle between two sisters-in-law over whether or not the mother's rights would be terminated initially as to all three children of the defendant and, subsequently, as to two of the children.
The basic grounds for the termination was that there was no ongoing relationship between the birth parents and the CT Page 7455 children. An imperative to the defense of that charge is visitation. Meaningful visitation, in the context of such a serious charge, requires a meaningful home for children to meet and stay with their mother. It still has meaning in the context of the current battle of the protagonists for visitation and custody of the two minor children.
One of the important factors looked at in a reunification case is an adequate home for the children to visit and stay at. Defendant's modest three-room apartment appears to be the minimum necessary for the purposes of visitation and custody. Although the defendant could accommodate her personal housing needs in a room somewhere that clearly would be an inappropriate place for visitation with the children. Clearly, it was necessary for the defendant to have an apartment available for children if she was going to succeed in her legal battle with the plaintiff.
It should also be noted the plaintiff, whether for good or bad reasons, attempted to leverage her financial advantage in her fight for the children. First, she promised the defendant, when the defendant was addicted, that the plaintiff and her husband would assume all costs of the children. Second, after the defendant recovered from her addiction and after Sarai moved out of the plaintiff's home, claiming abuse, the plaintiff manipulated Ednardo Maldonado's support as to Noemi so that the defendant would receive no contribution from Ednardo for Sarai, despite the disparity between the plaintiff's and defendant's financial resources.
In addition, the defendant had significant visitation expenses aside from housing costs. These significant visitation expenses encompass food, entertainment and transportation. The plaintiff claims they are not significant because they are not substantial in absolute monetary terms. They are, however, significant in two ways. First, their cost represents 10% of the defendant's net income and that is significant, but particularly with regard to a person whose income is slightly over the poverty level. Second, in the context of a termination and custody battle, they are even more significant where the children have to compare them in contrast to the plaintiff's trips with them to Hawaii.
Finally, a significant portion of the defendant's CT Page 7456 housing budget was attributable to Sarai when she was living there. That impacted on an already austere budget. It is still important that Sarai continue to have a safe haven at her mother's home.
This court has examined the support claim utilizing the criteria set out in 46b-84 of the Connecticut General Statutes and enters the following orders.
While Sarai was living with Ms. Vargas, the defendant is ordered to pay $15.00 for Janet and Noemi. When Sarai is not living with Ms. Vargas, but the apartment is maintained for visitation with Noemi and Janet, as well as a safe haven resource for Sarai, the defendant shall pay $30.00 per week support to the plaintiff. This latter order may be reexamined in the event Mr. Maldonado makes any claim for support.
With regard to Edwin Mercado he does not expend any money for visitation with Janet and, therefore, his support shall be increased from $50.00 per week to $68.00 per week, which is more consistent with the guidelines. In addition, he shall place Janet on his medical insurance.
Any payments made to Lucy Favrow on behalf of Sarai Maldonado when Sarai was under the control of DCYS from February 4, 1991 to August 28, 1991 ought to be redirected and paid to the State of Connecticut. The plaintiff ought not to be able to take advantage of her manipulation of the Magistrate Court so as to have eliminated the capacity of Mr. Maldonado to pay the defendant her share. Therefore, any payment made to Lucy Favrow over $42.50 per week (half the order on behalf of Noemi) shall be credited to any arrearage owed by the defendant to the plaintiff. The defendant's liability to the State for the ten-week period of April 16, 1991 through August 28, 1991 for Sarai shall be $200.00, payable at the rate of $2.00 per week.
To avoid continued problems, the court consolidates File No. 606804 and File No. 606805 with File No. 39 49 47.
Barall, J.